### Lynch v. Mayfield, Administrator
*[Cite as 6 AOA 21]*

*Case No. 2669*
*Clark County, (2nd)*
*Decided August 29, 1990*

*Jeffrey M. Decile, James C. Ayers Law Office, 165 North High Street, Columbus, Ohio 43215, Larrimer & Larrimer, 165 North High Street, Columbus, Ohio 43215, for Plaintiff-Appellant.*

*Anthony J. Celebrezze, Jr., Attorney General of Ohio, by Teresa Oglesby McIntyre, Assistant Attorney General, 65 East State Street, Suite 708, Columbus, Ohio 43266-0590, for Defendants-Appellees.*

GRADY, J.

This appeal stems from the trial court's decision granting summary judgment for Defendants-Appellees James A. Mayfield, et al. The trial court found that the work-related injury sustained by Appellant Carroll S. Lynch was not localized in Ohio and therefore Appellees were without jurisdiction to award workers' compensation benefits to her.

Lynch presents a single issue for our consideration:

Is employment "localized" in Ohio for purposes of workers' compensation coverage when a person is hired in Arkansas but shortly thereafter transferred to Springfield, Ohio where her day-to-day employment activities are supervised and controlled?

For the reasons explained below, we find that the trial court erred in granting summary judgment for Appellees on the grounds that Lynch's employment was not localized in Ohio. We conclude that, notwithstanding the extraterritorial nature of Lynch's injury, her employment was localized in Ohio for purposes of workers' compensation coverage. Accordingly, we vacate the decision of the trial court and remand the case for further proceedings.

I.

In August 1984, Appellant Carroll Lynch, a resident of Springfield, Ohio went to Lowell, Arkansas to apply for a truck driving position with J.B. Hunt Transport Company. Lynch learned of an opportunity to drive for J.B. Hunt through her husband who was already employed as a driver for the company. Prior to being hired, Lynch was required to pass a physical examination and successfully complete a road test for driver certification. She successfully completed the tests and

was immediately assigned to the Lowell, Arkansas terminal. Lynch continued to maintain her residence in Springfield.

From August, 1984 to October, 1984, Lynch's trucking assignments originated in the J.B. Hunt terminal in Lowell. In October, 1984, J.B. Hunt transferred Lynch and her husband from Lowell to its new terminal in Springfield. Lynch was required to undergo a second physical examination and successfully complete another road test. Thereafter, Lynch's employment activities were supervised and controlled by personnel in the Springfield terminal where she began and ultimately ended every delivery run. Further, Lynch was told to report all safety related matters to personnel at the Springfield terminal as well as file all medical claims through the Springfield terminal. Only Lynch's pay checks continued to originate from J.B. Hunt's office in Arkansas.

On October 10, 1985, Lynch and her husband drove a loaded trailer from the Springfield terminal to Dallas, Texas. Upon delivering the load, the couple picked up a another load in Dallas for delivery to Arkansas. Shortly after picking up this second load, the couple's truck was rear-ended on a Dallas thoroughfare. Lynch was thrown against the windshield, incurring back and neck injuries. The couple continued to their destination in Arkansas where Lynch sought medical treatment for her injuries. She then returned to Springfield.

Without Lynch's knowledge, J.B. Hunt filed an industrial claim on her behalf with the Hartford Insurance Co. of North Little Rock, Arkansas, the trucking company's insurance carrier responsible for handling its workers' compensation claims. The Hartford covered some of Lynch's expenses paying her $282.19 for medical expenses and $642.17 in temporary wage compensation. Lynch, however, disputes these figures contending that the insurer provided her only about $300 in total compensation notwithstanding almost $6,000 in medical bills and lost wages.

Lynch filed a workers' compensation claim with Ohio's Industrial Commission. The Industrial Commission denied the claim asserting that her employment was not localized in Ohio. Pursuant to R.C. 4123.519, Lynch appealed the Industrial Commission's decision to the Court of Common Pleas where both parties filed motions for summary judgment. The court found, in pertinent part:

(1) that Lynch was hired in Lowell, Arkansas;
(2) that during her initial employment her shipping assignments originated in the Lowell terminal;

(3) that after she was transferred to Springfield, her shipping assignments originated in the Springfield terminal;
(4) that Lynch and her husband made interstate deliveries;
(5) that her pay checks came from Arkansas which deducted state income taxes;
(6) that no agreements had been entered pursuant to R.C. 4123.54 to designate a state for workers' compensation coverage;
(7) that J.B. Hunt secured workers' compensation 'coverage through the Hartford Insurance Co. of North Little Rock, Arkansas; and
(8) that Lynch was injured while taking a load from Texas to Arkansas.

Relying on *State, ex rel. Stanadyne. Inc., v. Indus. Comm.* (1984), 12 Ohio St. 3d 199, the court concluded that Lynch's injury was not localized in Ohio and therefore Appellees were without jurisdiction to grant workers' compensation benefits to her. The court granted summary judgment for Appellees.

Lynch filed a timely notice of appeal from the trial court's decision presenting one assignment of error.

II. Lynch states as her assignment of error:
"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF WHEN IT GRANTED THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND HELD THAT OHIO'S WORKERS' COMPENSATION SYSTEM DID NOT COVER THE PLAINTIFF'S INJURIES, WHICH WERE SUSTAINED ON OR ABOUT OCTOBER 10, 1985."

The purpose of Ohio's workers' compensation system is to provide "*** compensation to workers' and their dependents, for death, injuries, or occupational diseases, occasioned in the course of such [workers'] employment *** [.]" Article II, Section 35, Constitution. See, also, *Ruddy v. Indus. Comm.* (1950), 153 Ohio St. 475, syllabus 1. The system does not make employers the absolute insurers of their employees' safety. *Phelps v. Positive Action Tool Co.* (1986), 26 Ohio St.3d 142. Rather, the system is meant to protect employees against the potentially devastating consequences of work-related injuries. *Id.* at 142. To this end, workers' compensation legislation is to be "liberally construed in favor of employees and the dependents of deceased employees." R.C. 4123.95.

Article II, Section 35 of the Ohio Constitution and its corresponding legislation do not limit workers' compensation coverage solely to workers

injured within the geographical boundaries of the State of Ohio. Rather, "the state's interest in the employment relationship supports the right of an employee *** to compensation from the state fund for an extraterritorial injury." *State, ex rel. Bailey, v. Krise* (1969), 18 Ohio St.2d 191, 192. See, also, *State, ex rel. Stanadyne, Inc, supra; Indus. Comm. v. Gardinio* (1929), 119 Ohio St. 539; 93 Ohio Jurisprudence 3d (1989), Workers' Compensation, Section 11. Any work-related injury incurred during *employment* which is "localized" in Ohio is compensable notwithstanding the extraterritorial nature of the injury. *Prendergast v. Indus. Comm.* (1940), 136 Ohio St. 535, 543.

In *State, ex rel. Stanadyne, Inc, supra,* the Ohio Supreme Court enumerated several factors which are important considerations in determining whether employment is localized in Ohio for purposes of workers' compensation coverage. These factors include

    (1) the locus of the employee's contract for hire;

    (2) the locus of control and supervision of the employee's job-related activities, *i.e.,* who supervises and controls the drivers' routes, destinations, the type of truck driven and goods to be transported;

    (3) where the work-related injury occurred;

    (4) whether the injured worker was employed in Ohio or at a branch facility of a company which also happened to do business in Ohio; and

    (5) in which state were workers' compensation premiums paid. See, generally, *State, ex rel. Stanadyne Inc, supra,* at 202-203. See, also, *Foran v. Fisher Foods, Inc* (1985), 17 Ohio St.3d 193.

Applying these considerations to the facts before us, we conclude that Lynch's employment was localized in Ohio for purposes of workers' compensation coverage.

The record indicates that Lynch's initial contract for hire was made in Arkansas. However, after October 1984, supervision and control of Lynch's employment activities transferred to personnel in the Springfield terminal. J.B. Hunt personnel in Springfield assigned Lynch her routes, destinations, type of truck to be driven and goods to be shipped. All truck runs began and ultimately ended at the Springfield terminal. All accident reports and medical claims were to be filed through the Springfield terminal. Consequently, unlike the situation in *State, ex rel. Stanadyne, Inc,*, *supra,* where the non-resident decedent employee's contact with Ohio was limited to the bare possibility that he might at some future time enter the state to make a delivery at a company facility, virtually all of Lynch's employ-

ment activities originated in and were performed as a consequence of her employment relationship with J.B. Hunt's Springfield terminal. Lynch did not have a purely tangential employment relationship with Ohio.

Appellees maintain that the fact that Lynch's employment contract was originally made in Arkansas, that her pay check continued to originate from Arkansas, and that J.B. Hunt paid workers' compensation premiums to the Arkansas system, places the locus of her employment in Arkansas. We disagree.

The original locus of the employment contract does not control the issue of localization for workers' compensation purposes. Cf., *Gardinio, supra,* at 544. Rather, as noted in *Gardinio, supra,* at 544-545.

"It is well established that the law of the state in which a contract is made and is to be performed is considered as written into and becomes a part of and governs the contract; *but, where a contract made in one state is to be performed in another, the rule is equally well established, as hereinbefore noted, that the law of the place of performance governs the contract."* (Citation omitted) (Emphasis added)

Similarly, where, as here, an employment contract is made in one state, yet the obligations of that contract are supervised and performed in another state, the state in which performance occurs may be obligated to provide workers' compensation coverage. While the original locus of Lynch's employment contract was in Arkansas, the obligations of that contract transferred when she relocated to Ohio. It was in Ohio, not Arkansas, that J.B. Hunt personnel supervised Lynch and exercised primary control over her day-to-day employment activities. Thus, Lynch's employment was localized in Ohio for purposes of workers' compensation coverage.

Further, although Lynch's pay check continued to originate from J.B. Hunt's office in Lowell, Arkansas, this alone does not conclusively establish that the locus of her employment was in Arkansas. Many interstate corporations distribute employee pay checks nationwide from a single home office location. Absent evidence that an employer regularly distributed pay checks from multiple locations, the point of origin of a pay check is not dispositive of the locus of employment.

Finally, J.B. Hunt's unilateral decision to participate in the Arkansas system will not deprive Lynch of coverage under the Ohio system absent an agreement that she choose to be bound

solely to the Arkansas system. R.C. 4123.54 provides, in pertinent part:

"Whenever, with respect to an employee of an employer who is subject to and has complied with sections 4123.01 to 4123.94 of the Revised Code, there is possibility of conflict with respect to the application of workers' compensation laws because the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, *the employer and the employee may agree to be bound by the laws of this state or by the laws of some other state in which all or some portion of the work of the employee is to be performed. Such agreement shall be in writing and shall be filed with the industrial commission within ten days after it is executed* ***[.]" (Emphasis added)

This same provision goes on to state that:

"If any employee or his dependents are awarded workers' compensation benefits or recover damages from the employer under the laws of another state, *the amount so awarded or recovered *** shall be credited on the amount of any award of compensation or benefits made to the employee or his dependents by the industrial commission."* (Emphasis added)

The language of this provision indicates that the General Assembly envisioned the possibility that an injured employee could receive workers' compensation for an injury from more than one state. Such multiple and simultaneous recoveries would be subject to a set-off to prevent an excessive recovery for the same injury.

Here, there is no evidence that the parties agreed to be bound solely to coverage under Arkansas' workers' compensation system. Accordingly, J.B. Hunt's unilateral decision to participate- in the Arkansas system did not deprive the Industrial Commission of jurisdiction to consider Lynch's claim.

### III.

Construing the law most favorably for the employee (R.C. 4123.95), we conclude that the trial court erred in concluding that Lynch's employment was not localized in Ohio for purposes of workers' compensation coverage. The Industrial Commission had jurisdiction to consider Lynch's workers' compensation claim. Accordingly, we vacate the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

BROGAN, and FAIN, J.J., concur.