SCHRAMM, Appellee,

v.

APPLETON PAPERS, INC., Appellant.

[Cite as *Schramm v. Appleton Papers, Inc.,* 162 Ohio App.3d 270, 2005-Ohio-3663.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20940.

Decided July 15, 2005.

Christopher J. Cornyn, for appellee.

Diane C. Reichwein and David C. Faure, for appellant.

WOLFF, Judge.

{¶ 1} Appleton Papers, Inc. ("Appleton") appeals from an order of the Montgomery County Court of Common Pleas, which denied its motion for judgment on the pleadings, pursuant to Civ.R. 12(C). Appleton had argued that Diane L. Schramm had waived her claims against Appleton, her former employer, when she signed a separation agreement with the company.

{¶ 2} According to Schramm's complaint, Schramm was employed by Appleton at its Alex–Bell plant location as a Central Maintenance Supervisor. On October 30, 2001, while climbing up the side of the power-house building at the plant, Schramm slipped on some flashing and fell onto the plant roof. As a result, she cut her hand and injured her right wrist, which aggravated a cyst located in her wrist. Schramm filed a claim for workers' compensation benefits. Thereafter, Appleton allegedly ignored her work restrictions, increased her workload beyond her physical ability to perform, and gave her an unfavorable work-performance evaluation. On November 8, 2002, Appleton discharged her.

{¶ 3} On May 7, 2003, Schramm filed suit in the Montgomery County Court of Common Pleas, alleging that Appleton had retaliated against her, in violation of R.C. 4123.90, due to her pursuing a workers' compensation claim. She further

claimed that Appleton had wrongfully discharged her in violation of the public policy set forth in R.C. 4123.90.

{¶ 4} Appleton answered the complaint, denying the retaliation and wrongful discharge. Among its defenses, it claimed that Schramm's claims were barred by a separation agreement, which was executed on November 8, 2002. Under that agreement, Appleton agreed to pay $46,324.44—which is an amount equal to 36 weeks of Schramm's base salary—and the same portion of any medical and dental premiums that Appleton had paid during Schramm's employment, through July 17, 2003. In exchange, Schramm released and waived her claims against Appleton, as set forth in paragraph three of the agreement, which provided:

{¶ 5} "A. *Release and Waiver.* In exchange for the Conditional Benefits, Ms. Schramm irrevocably and unconditionally releases and fully and forever discharges the Released Parties (defined below) from any and all claims, liabilities, obligations, covenants, rights, demands and damages of any nature whatsoever arising out of or relating in any way to her employment; the termination of her employment; or any act, omission, occurrence, transaction, or matter relating to her employment up to and including the date of this Agreement.

{¶ 6} "Ms. Schramm understands and agrees that this release and waiver shall cover, but not be limited to, claims for severance, employee benefits, medical or other leave, breach of express or implied employment or other contract, wrongful discharge, detrimental reliance, impairment of economic opportunity, employment discrimination, attorneys fees, prevailing party fees, or any other theory of recovery or claim, whether legal or equitable, related to her employment or her separation from employment.

{¶ 7} "Ms. Schramm releases the Released Parties from and waives the right to pursue all such claims[,] liabilities, obligations, covenants, rights, demands and damages whether they are currently known or unknown, anticipated or unanticipated by Ms. Schramm.

{¶ 8} "Ms. Schramm understands that there are various state, federal and local laws that govern the employment relationship and that prohibit employment discrimination on the basis of age, sex, race, color, national origin, religion, disability, handicap, veteran status and other protected categories. Ms. Schramm further understands that such laws are enforced through the Wisconsin Equal Rights Division, Department of Workforce Development; the Equal Employment Opportunity Commission; the U.S. Department of Labor, other state and federal agencies and state and federal courts. Notwithstanding any rights she may have under these laws, Ms. Schramm releases and forever discharges the Released Parties from all claims and demands whatsoever, in law or equity, including but not limited to, claims or demands under or affected by [the various federal and state statutes listed]. * * *

{¶ 9} "Ms. Schramm understands and agrees that the Conditional Benefits provided in exchange for this release and waiver are greater, in their totality, than any other benefits due her absent her participation in this Agreement."

{¶ 10} Schramm does not dispute that she signed this agreement.

{¶ 11} In addition to asserting that Schramm's claims were precluded by the separation agreement, Appleton filed a counterclaim, alleging that Schramm had breached the separation agreement by filing the action and that she has been unjustly enriched.

{¶ 12} On September 22, 2003, Appleton filed a motion for judgment on the pleadings on all of Schramm's claims, arguing that they were barred by a valid release. On the same basis, the company also sought judgment in its favor on its counterclaim. On March 26, 2004, the trial court overruled the motion, concluding that Schramm could not waive her rights under R.C. 4123.90 due to R.C. 4123.80, which provides, generally, that "[n]o agreement by an employee to waive an employee's rights to compensation under this chapter is valid.* * *." The trial court reasoned that "compensation" includes damages under R.C. 4123.90 and that R.C. 4123.90 fell under "this chapter." Upon a motion by Appleton, the trial court certified its ruling as a final appealable order on the ground that the order completely disposed of Appleton's counterclaim. See Civ.R. 54(B).

{¶ 13} We have previously dismissed an earlier appeal in this matter, concluding that we lacked jurisdiction to hear the appeal because Appleton's counterclaim had not actually been dismissed by the trial court. *See Schramm v. Appleton Papers, Inc., et al.* (Dec. 14, 2004), Montgomery App. No. 20594. Thereafter, the trial court dismissed Appleton's counterclaim. Appleton has appealed again, and the parties have agreed to rely on the briefs filed and arguments made in the previous appeal.

{¶ 14} Appleton raises one assignment of error on appeal.

{¶ 15} "The trial court erred as a matter of law when it denied appellant Appleton Paper's motion for judgment on the pleadings. [March 26, 2004 decision, order and entry sustaining (sic) defendant's motion for judgment on the pleadings]."

{¶ 16} In its sole assignment of error, Appleton asserts that the trial court erred in concluding that R.C. 4123.80 precluded the waiver of Schramm's claims. It asserts that R.C. 4123.80 does not apply to the settlement of accrued claims. In addition, it argues that the "tort and tort-like remedies available for Schramm's claims for wrongful termination of employment [do not] constitute 'compensation' under Chapter 4123." The company further claims that the wrongful discharge in violation of public policy claim does not arise under

Chapter 4123 and, thus, R.C. 4123.80 does not invalidate the separation agreement as to that claim.

{¶ 17} Schramm responds that R.C. 4123.80 makes no distinction between a "claim" for compensation and/or benefits under R.C. 4123.01 and an action for damages under R.C. 4123.90. She also claims that Appleton improperly relied upon *Weinberger v. Indus. Comm.* (1941), 139 Ohio St. 92, 22 O.O. 59, 38 N.E.2d 399, for the proposition that R.C. 4123.80 applies only to future claims. She argues that a claim pursuant to R.C. 4123.90, which must arise following the accrual of a workers' compensation claim, falls within R.C. Chapter 4123. Finally, Schramm argues that her claims do not fall within the terms of the release and that the release unlawfully requires her to reimburse or to indemnify Appleton for sums paid to her in the event that she pursues a claim for damages under R.C. 4123.90.

{¶ 18} We reject Schramm's contention that her R.C. 4123.90 claim and her claim of wrongful discharge in violation of public policy do not fall within paragraph three of the separation agreement. Although the agreement does not expressly mention claims under R.C. 4123.90, the agreement releases Appleton from "any and all claims * * * arising out of or relating in any way to her employment; the termination of her employment; or any act, omission, occurrence, transaction, or matter relating to her employment up to and including the date of this Agreement." In addition, the agreement provides that Schramm has waived claims of "wrongful discharge," "employment discrimination," or "any other theory of recovery or claim, whether legal or equitable, related to her employment or her separation from employment." Schramm's claims unquestionably relate to her employment and separation, and they allege wrongful discharge and discrimination. Accordingly, they fall within the scope of paragraph three of the separation agreement.

{¶ 19} In addition, we find no basis for Schramm's assertion that the release is void, pursuant to R.C. 4123.82. R.C. 4123.82 prohibits contracts and agreements "which undertake to indemnify or insure an employer against loss or liability for the payment of compensation to workers * * *, or which indemnify the employer against damages when the injury, disease, or death arises from the failure to comply with any lawful requirement for the protection of the lives, health, and safety of employees, or when the same is occasioned by the willful act of the employer * * *, or by which it is agreed that the insurer shall pay any such damages." Upon review of the agreement in its entirety, we see no basis to conclude that R.C. 4123.82 is applicable or that the agreement violates R.C. 4123.82.

{¶ 20} Accordingly, assuming that paragraph three of the separation agreement is a valid waiver and release, Schramm's R.C. 4123.90 claim and her

wrongful discharge claims have been waived. The critical issue, therefore, is whether R.C. 4123.80 precludes this apparent waiver of Schramm's right to pursue her R.C. 4123.90 claim as well as her wrongful discharge claim based on that statute. As discussed, infra, we hold it does not.

{¶ 21} Section 35, Article II of the Ohio Constitution permits the establishment of a state fund, created by compulsory contribution by employers and administered by the state, for the purpose of providing "compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment." Id.; *Lynch v. Mayfield* (1990), 69 Ohio App.3d 229, 233, 590 N.E.2d 351, citing Section 35, Article II, Ohio Constitution; *Turner v. Admr.*, Miami App. No. 2002–CA–50, 2003-Ohio-2405, 2003 WL 21060857, ¶ 13. In accordance with this mandate, employers are required to pay semi-annual premiums into the state insurance fund, or may seek self-insuring employer status. Employers who comply with these requirements are generally immune from liability to an employee who is injured during the course of her employment, and the injured employee is limited to redress through the workers' compensation scheme. See R.C. 4123.74 (immunity of complying employers). But see *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108 (where an employee's injury results from the employer's intentional tort, the employee may file a suit for damages against the employer).

{¶ 22} R.C. 4123.80 limits an employee's ability to waive his or her rights to compensation. It provides: "No agreement by an employee to waive his rights to compensation under this chapter is valid, except that:

{¶ 23} "(A) An employee who is blind may waive the compensation that may become due him for injury or disability in cases where the injury or disability may be directly caused by or due to his blindness. The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission may adopt and enforce rules governing the employment of such persons and the inspection of their places of employment.

{¶ 24} "(B) An employee may waive his rights to compensation or benefits as authorized pursuant to division (C)(3) of section 4123.01 of the Revised Code [concerning employer-sponsored recreational or fitness activity].

{¶ 25} "No agreement by an employee to pay any portion of the premium paid by his employer into the state insurance fund is valid."

{¶ 26} R.C. 4123.90 prohibits retaliation by an employer based on an employee's pursuit of a workers' compensation claim. That statute states:

{¶ 27} "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for

an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge, demotion, reassignment, or punitive action taken, and no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken."

{¶ 28} An aggrieved employee may also pursue a wrongful-discharge claim based on a violation of the public policy set forth in R.C. 4123.90. See, e.g., *Boyd v. Winton Hills Med. & Health Ctr., Inc.* (1999), 133 Ohio App.3d 150, 727 N.E.2d 137; *Balog v. Matteo Aluminum, Inc.*, Cuyahoga App. No. 82090, 2003-Ohio-4937, 2003 WL 22145842.

{¶ 29} Schramm's statutory claim under R.C. 4123.90 and her wrongful discharge claim based on the public policy set forth in R.C. 4123.90 are distinct claims that must be addressed separately. As described by the Tenth District in *Sidenstricker v. Miller Pavement Maintenance, Inc.*, 158 Ohio App.3d 356, 2004-Ohio-4653, 815 N.E.2d 736:

{¶ 30} "While a statutory retaliation claim under R.C. 4123.90 affords equitable relief and has no right to a jury trial, it is well established that a wrongful-discharge claim based on violation of public policy under R.C. 4123.90 is a common-law claim that provides legal relief for which a right to a jury trial is expressly recognized for part of the claim. * * *

{¶ 31} "Moreover, the remedies under the two claims differ. A common-law wrongful-discharge action based on a violation of public policy established in the workers' compensation statutes allows a full range of remedies, including full monetary recovery, that are not available under the limited remedy provided in a statutory claim brought under R.C. 4123.90. The statutory claim allows equitable relief only, in the form of reinstatement with back pay and lost wages. [Citations omitted.] A request for legal relief in the public-policy claim is neither incidental to nor dependent upon first obtaining equitable relief in the statutory claim. A plaintiff may pursue a common-law wrongful-discharge claim for violation of public policy expressed in R.C. 4123.90 in addition to or in lieu of

pursuing a statutory retaliation claim directly under R.C. 4123.90." *Sidenstricker*, 158 Ohio App.3d at 363, 815 N.E.2d 736.

{¶ 32} Turning to the case before us, we have little difficulty concluding that an employee may waive a claim of wrongful discharge in violation of the public policy set forth in R.C. 4123.90 and that Schramm has, in fact, waived that claim. Although this cause of action is based on R.C. 4123.90, the remedies that are permitted are not "rights to compensation under this chapter." R.C. 4123.80. To the contrary, the wrongful-discharge claim is distinct from that authorized by the statute, and the potential recovery far exceeds that provided under R.C. 4123.90. Accordingly, R.C. 4123.80 does not preclude an employee from waiving her claim of wrongful discharge in violation of the public policy set forth in R.C. 4123.90. As discussed above, Schramm's wrongful discharge claim fell within the scope of paragraph three of the separation agreement. Accordingly, Schramm waived her claim of wrongful discharge in violation of the policy set forth in R.C. 4123.90 when she signed that agreement.

{¶ 33} We likewise hold that Schramm waived her statutory claim under R.C. 4123.90. Although R.C. Chapter 4123 does not define "compensation," a thorough reading of the chapter in conjunction with R.C. Chapter 4121 (regarding the Industrial Commission) and the Ohio Constitution indicates that "compensation" is used to refer to awards of compensation by the Bureau of Workers' Compensation or the Industrial Commission for injuries, occupational disease, or death.

{¶ 34} For example, R.C. 4123.54(A) provides that employees who are injured or who contract an occupational disease and the dependents of employees who are killed in the course of their employment are "entitled to receive * * * the compensation for loss sustained on account of the injury, occupational disease, or death." R.C. 4121.43 directs the Administrator of the Bureau of Workers' Compensation to adopt rules regarding the payment of compensation. Ohio Admin.Code 4123–3–10(A)(2)(a) provides, "Any order, finding or decision of the bureau, the industrial commission, its hearing officers or boards of review wherein payment of compensation is to be made shall be promptly forwarded to the appropriate department of the bureau charged with the duty of making the payment * * *." Other statutory and administrative code sections also reveal that "compensation" has been used throughout the workers' compensation law in reference to compensation for the occupational disease or injury. See, e.g., R.C. 4123.54(B)(5) (damages recovered under the laws of another state "shall be credited on the amount of any award of compensation or benefits made to the employee or the employee's dependents by the bureau"); R.C. 4123.55 (no compensation for the first week after an injury is received or an occupational disease contracted); R.C. 4123.56 (payment of temporary disability compensa-

tion); R.C. 4123.57 (payment of partial disability compensation); R.C. 4123.58 (compensation for permanent total disability); Ohio Admin.Code 4123–3–06 (application for payment of compensation and medical expenses). Accordingly, a claim under R.C. 4123.90 is not an assertion of a right to compensation under the workers' compensation law.

{¶ 35} Moreover, we find little reason to conflate the settlement of a workers' compensation claim with the settlement of a R.C. 4123.90 claim. R.C. 4123.65 governs the settlement of workers' compensation claims. Under that section, the settlement of a claim regarding a state fund employer must be submitted to the administrator of the bureau for approval, and the administrator must be mailed a copy of a settlement between an employee and a self-insuring employer. R.C. 4123.65(A). The settlement may "pertain to one or more claims of a claimant, or one or more parts of a claim, or the compensation or benefits pertaining to either, or any combination thereof."

{¶ 36} Unlike a workers' compensation claim, a claim under R.C. 4123.90 is initiated by the filing of an action in court. The workers' compensation bureau is not involved, and we find no authority to support a contention that an employee and her employer cannot settle that pending litigation without the intervention of the bureau of worker's compensation. In light of the fact that parties to such litigation may settle an employee's R.C. 4123.90 claim once litigation has begun, we find no reasonable basis to preclude the settlement of that claim prior to the initiation of a lawsuit.

{¶ 37} Finally, we agree with Appleton that the purpose of R.C. 4123.80 was to prevent employers from requiring employees to waive their statutory right to compensation prior to the accrual of a workers' compensation claim. As stated above, the Workers' Compensation Act permits an employee to settle her workers' compensation claim after it has accrued, in accordance with R.C. 4123.65. See *State ex rel. Weinberger v. Indus. Comm.* (1941), 139 Ohio St. 92, 22 O.O. 59, 38 N.E.2d 399, paragraph one of the syllabus ("Section 1465–94, General Code, providing that no agreement by an injured employee to waive his rights to compensation under the Workmen's Compensation Act shall be valid, applies only to an agreement made prior to the accrual of the claim or cause of action, or to an agreement of waiver or settlement consummated after such date wherein the consideration is merely nominal"). In addition, the exceptions set forth in R.C. 4123.80 indicate that, in two circumstances, employees may waive their rights prior to the accrual of their claims—where the employee is blind, and where the employee is engaged in an employer-sponsored recreational or fitness activity. Considering R.C. 4123.80 in its entirety, we note that the Ohio legislature was concerned about employees releasing their employers from their obligations

under the workers' compensation law prior to an injury, occupational disease, or death, and without the protections of R.C. 4123.65.

{¶ 38} Accordingly, the trial court erred when it concluded that Schramm's waiver of her claims under R.C. 4123.90 and for wrongful discharge in violation of the public policy in R.C. 4123.90 was invalid under R.C. 4123.80.

{¶ 39} The assignment of error is sustained.

{¶ 40} The judgment of the trial court will be reversed and the action remanded to the trial court for further proceedings.

Judgment reversed<br>and cause remanded.

GRADY and YOUNG, JJ., concur.

FREDERICK N. YOUNG, J., sitting by assignment of the Chief Justice of the Supreme Court of Ohio.