[Cite as *Coleman v. KBO, Inc.*, 2018-Ohio-763.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| MICHELE COLEMAN | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2017-CA-82 |
| | : | |
| v. | : | Trial Court Case No. 17-CV-145 |
| | : | |
| KBO, INC., et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of March, 2018.

. . . . . . . . . . .

MICHAEL J. MULDOON, Atty. Reg. No. 0034007, 1375 Dublin Road, Columbus, Ohio
43215
    Attorney for Plaintiff-Appellant

BRIAN C. THOMAS, Atty. Reg. No. 0074043, 312 Walnut Street, Suite 1800, Cincinnati,
Ohio 45202
    Attorney for Defendants-Appellees

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michele Coleman appeals from a judgment of the Clark County Court of Common Pleas, which entered summary judgment in favor of KBO Inc., d.b.a. Klosterman's Bakery, finding that there was no genuine issue of material fact that Coleman was ineligible for workers' compensation for a psychiatric condition diagnosed five years after a workplace injury. For the following reasons, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

{¶ 2} The underlying facts are undisputed. In September 2009, Coleman was involved in an accident at her workplace, KBO, as a result of which she sustained physical injury to her right wrist. Her claim for workers' compensation with respect to this injury (a sprain) was allowed, and her claim was amended to include right wrist synovitis and ulnocarpal abutment syndrome in 2010 and 2012, respectively. Coleman had surgeries as a result of these conditions in June 2010 and April 2013.

{¶ 3} In January 2015, Coleman sought workers' compensation for an additional condition of "major depression, single episode, non-psychotic, moderate" (hereinafter, "depression"), which she related to the same injury. A district hearing officer of the Industrial Commission of Ohio denied the addition of this condition, and a staff hearing officer affirmed the district hearing officer's decision. Coleman appealed to the Industrial Commission, which refused her appeal without a hearing.

{¶ 4} On March 7, 2017, Coleman appealed to the Clark County Court of Common Pleas, in the form of a complaint, pursuant to R.C. 4123.512. KBO and the Bureau of Workers' Compensation filed answers. KBO served Coleman with a set of requests for admissions, and Coleman's admissions were filed with the court. These

admissions evinced a lack of treatment for and Coleman's failure to report symptoms of depression between 2009 and 2014.

{¶ 5}   On July 21, 2017, KBO filed a motion for summary judgment on Coleman's claim that she was entitled to workers' compensation for the additional claim of depression.   KBO asserted that there was no genuine issue of material fact whether Coleman's depression arose from her previously-allowed physical conditions, and therefore that KBO was entitled to judgment as a matter of law.   Coleman opposed the motion for summary judgment, relying on a psychologist's affidavit which stated that her depression "was directly caused by her workers' compensation injury" in 2009.

{¶ 6}   On August 22, 2017, the trial court granted KBO's motion for summary judgment.   The trial court concluded that, due to the five years between the physical injury and the diagnosis of a psychiatric condition and to Coleman's assertions that she was not suffering from depression during the intervening period, reasonable minds could only conclude that the psychiatric condition did not arise from the physical injury.   The trial court further found that Coleman's expert's affidavit attesting to a causal connection did not create a genuine issue of material fact, because it was "self-serving" and contradicted Coleman's prior "testimony" that she was not depressed.

{¶ 7}   Coleman appeals, raising one assignment of error.

***Summary Judgment Standard***

{¶ 8}   Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party.   *Zivich v. Mentor*

*Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 9} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 10} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### *Compensability of Mental Condition Under Workers' Compensation*

{¶ 11} The purpose of Ohio's workers' compensation system is to provide compensation to employees and their families for injuries or death that occur while on the job. Section 35, Article II, Constitution; *Schramm v. Appleton Papers, Inc.,* 162 Ohio App.3d 270, 2005-Ohio-3663, 833 N.E.2d 336, ¶ 21 (2d Dist.); *Lynch v. Mayfield,* 69 Ohio

App.3d 229, 233, 590 N.E.2d 351 (2d Dist.1990). For purposes of workers' compensation, an "injury" includes "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Both the "received in the course of" and the "arising out of" components in this formula must be satisfied, and the statute must be liberally construed in favor of awarding benefits. *Fisher v. Mayfield,* 49 Ohio St.3d 275, 277-278, 551 N.E.2d 1271 (1990); R.C. 4123.95.

{¶ 12} Psychiatric conditions are excluded from the general definition of "injury," "except where the claimant's psychiatric conditions have arisen from an injury or occupational disease sustained by that claimant." R.C. 4123.01(C)(1); *Armstrong v. John R. Jurgensen Co.,* 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 10. To be compensable, a psychiatric condition must have been started by and therefore result from a physical injury or occupational disease the claimant suffered, and there must be a causal connection between a claimant's physical injury and the claimant's mental condition. *Armstrong* at ¶ 17.

### *Analysis*

{¶ 13} In support of its motion for summary judgment, KBO argued that Coleman's depression did not "arise from" the 2009 injury. KBO did not submit its own expert or similar evidentiary materials; rather, it relied on Coleman's admissions and the fact that more than five years had passed between Coleman's physical injury and her claim related to depression. In her admissions, Coleman stated that: 1) prior to January 2015, she received no psychiatric treatment or psychotropic medications and had not been hospitalized for any psychiatric condition; 2) in 2009, 2010, 2011, 2012, 2013, and 2014,

no medical professional had diagnosed her with depression because of her wrist injuries; 3) she completed patient medical histories in August 2013, September 2013, and December 2013 in which she marked a box "No" regarding depression; 4) the first medical professional to diagnose her with "major depression" was Dr. Michael Glenn Drown, Ph.D., in January 2015. Coleman also admitted that the Industrial Commission terminated her entitlement to temporary total disability benefits in January 2014.

{¶ 14} In her Motion Contra KBO's Request for Summary Judgment, Coleman relied on an affidavit from Dr. Drown in which he stated that, in his professional opinion, "she was suffering from a diagnosis of major depression, single episode, non-psychotic, moderate" and that this psychological diagnosis "was directly caused by her workers' compensation injury which occurred on September 30, 2009" while she was employed with KBO. Dr. Drown attached to his affidavit a copy of his "Psychological Evaluation," other reports and "diagnostic evidence," and a letter detailing specific criticisms of KBO's expert's methodology and conclusion that Coleman did not "have a psychological diagnosis that could possibly be work related."[1]

{¶ 15} KBO argues that, because Coleman did not report and, in fact, expressly disclaimed any depression from the time of her wrist injury in 2009 through 2014, there was no genuine issue of material fact that her "2009 industrial injury did not start her psychiatric condition." In its motion, KBO relied on *Armstrong*, 136 Ohio St.3d 58, 2013-Ohio-2237, 990 N.E.2d 568, ¶ 10, in support of its position.

---

[1] According to Coleman's brief, Dr. Michael Murphy, KBO's expert, opined in the administrative proceedings that Coleman's psychological condition was not related to her work injury, but Dr. Murphy's opinion was not presented in support of KBO's motion for summary judgment.

{¶ 16} In *Armstrong*, the claimant sought workers' compensation for a psychiatric injury (post-traumatic stress disorder) after he witnessed a fatality in a traffic accident in the course of his employment, as well as for physical injuries that he suffered in the same accident. The claim for his physical injuries was allowed, but the claim for PTSD was not, and the denial of benefits for PTSD was appealed to the court of common pleas. The experts for both parties agreed that Armstrong experienced PTSD, but they disagreed about whether his physical injuries were causal factors in the development of PTSD. The employer's expert testified that the PTSD "was caused by witnessing the accident and 'the mental observation of the severity of the injury [to another driver], the fatality, [and] the fact that it could have been life-threatening' " to Armstrong. After a bench trial, the court credited the employer's expert's testimony in concluding that the PTSD did not arise from Armstrong's physical injuries, but rather from his observations of the accident and its injuries to others.

{¶ 17} The court of appeals and the supreme court affirmed. In affirming the denial of Armstrong's benefits for PTSD, the supreme court held that Armstrong's mental condition had not "arisen from an injury * * * sustained by th[e] claimant," as required by R.C. 4123.01(C)(1), and that there was no causal connection between his physical injury and his mental condition. The court declined to adopt a more expansive definition of "injury" that "embraced[d] the entire episode or accident giving rise to a claimant's physical injuries," as Armstrong had urged. In this context, the supreme court stated that "to be compensable, a psychiatric condition *must have been started by* and therefore result from a physical injury or occupational disease the claimant suffered." (Emphasis added.) *Id.* at ¶ 17, quoting the court of appeals decision in the same case, 2d Dist.

Clark No. 2011-CA-6, 2011-Ohio-6708, ¶ 35.

{¶ 18} KBO relied on the language in *Armstrong* that the psychological injury "must have been started by * * * the physical injury" in support of its argument that too much time had elapsed between Coleman's physical injury and her depression to conclude that there was a causal connection. We disagree with this interpretation. *Armstrong* holds that there must be a causal connection between the physical and psychological injuries in order to obtain workers' compensation for the psychological injury, but it does not discuss or in any way suggest that the psychological injury must occur contemporaneously with or within a certain period of time of the physical injury to be compensable. Of course, the passage of time is one factor to be considered in factually determining whether a causal connection has been established, and may make it more difficult for the claimant to establish such a connection. But *Armstrong* does not stand for the proposition that the absence of a psychological injury at the time of the physical injury, or sooner thereafter, is determinative.

{¶ 19} KBO also cites in its brief two cases in which a substantial amount of time had passed between the physical injury and the claimed psychological injury, and no causal connection between the physical and psychological injury was found.

{¶ 20} In *Hippely v. Lincoln Elec. Holdings, Inc.*, 8th Dist. Cuyahoga No. 96439, 2011-Ohio-5274, the claimant was injured in 2001 in a physically demanding job. He refused a recommended surgery out of concern about the risks and side effects and, in light of his physical limitations, was eventually given a job in the employer's cafeteria. He worked in the cafeteria for six years, but he stated that he "hated" it, found it "degrading," and felt "worthless"; he was eventually awarded temporary total disability.

{¶ 21} In 2009, almost eight years after the physical injury, Hippely sought workers' compensation for "major depressive disorder." At trial, the parties presented conflicting expert opinions as to the cause of Hippely's depression. Hippely's expert found that the 2001 injury was the cause, along with Hippely's loss of employment. *Id.* at ¶ 12. The employer's expert attributed Hippely's depression to his loss of work, his continuing unemployment, his negative feelings about how his employment had ended, and the death of his father around the time he stopped working; he found no causal relationship to the injury and opined that, if there were a connection, he would have expected the depression to manifest itself closer to the time of the injury. *Id.* at ¶ 13. The jury found in favor of the employer, and Hippely's motions for judgment notwithstanding the verdict and for a new trial were denied. The Eighth District Court of Appeals affirmed on appeal.

{¶ 22} In *Phipps v. Internatl. Paper Co.,* 12th Dist. Clinton No. CA2013-02-003, 2013-Ohio-3994, the claimant, Phipps, was injured in a slip-and-fall accident at work in 1984; workers' compensation was allowed for numerous conditions, and she underwent several surgeries as a result of the fall, including a knee replacement in 2010. In 2011, she applied for workers' compensation for a depressive disorder, diagnosed in 2010, which she and her expert believed was caused by her physical injury in 1984. However, at trial, the employer's expert stated his conclusions that Phipps was "strongly disposed to depression" based on her "childhood and family history," which included dropping out of school in 10th grade, becoming pregnant at age 16, marrying as a teen, and two close relatives who had died by suicide. *Id.* at ¶ 17. The jury found that Phipps was not entitled to workers' compensation for her depression, and the trial court overruled her

motion for judgment notwithstanding the verdict. The Twelfth District affirmed on appeal.

{¶ 23} Unlike *Armstrong*, the claimants in *Hippely* and *Phipps* alleged a provable direct connection between their physical injuries and their subsequent psychological conditions. But all of these cases emphasize the need to establish a causal connection between a physical injury and an alleged psychological injury. However, these cases are distinguishable from Coleman's case in that they were decided at trial and not on summary judgment. They do not stand for the proposition that, as a matter of law, "psychological conditions [are] not proximately caused by workplace injuries when the psychological conditions [are] diagnosed years after the accident," as KBO's brief seems to suggest.

{¶ 24} In Coleman's case, Dr. Drown stated by affidavit that, in his opinion, Coleman's depression "was directly caused by her workers' compensation injury" in 2009. KBO argued that Coleman's admissions that she had not experienced depression in the several years following her injury undercut her assertion that there was a causal connection. But Coleman need not have continuously experienced depression from the time of her physical injury to establish that the depression she experienced in 2015 was caused by the injury. Notwithstanding that Coleman acknowledged that she had denied being depressed in 2009 through 2014, Dr. Drown's affidavit created a genuine issue of material fact as to whether her depression in 2015 was caused by her injury. As such, summary judgment was not appropriate. *Accord Hoelscher v. KBO, Inc.*, 2d Dist. Clark No. 2017-CA-25, 2017-Ohio-5756, ¶ 8 (where experts disagree about cause of employee's psychological conditions, and claimant's expert connects those conditions to a workplace injury, eligibility for workers' compensation may not be resolved by summary

judgment).

**{¶ 25}** Moreover, the trial court improperly concluded that it could not consider Dr. Drown's affidavit, because the affidavit "contradicted" Coleman's "former deposition testimony" without sufficient explanation, in an effort to defeat summary judgment. The trial court did not cite any authority for this position, but *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, is instructive.

**{¶ 26}** In *Byrd*, the supreme court considered a certified question regarding the effect of a party's conflicting statements by affidavit and deposition when ruling on a motion for summary judgment. Byrd, who had been injured in a car accident while driving his employer's vehicle, sought coverage under his employer's uninsured/underinsured motorist policy. In a 2001 deposition, Byrd stated that he had been on a personal errand to his father-in-law's home at the time of the accident. *Id.* at ¶ 14. But when the employer filed a motion for summary judgment, in which it relied on the fact that Byrd was not within the scope of his employment at the time of the accident, Byrd attached an affidavit to his motion contra in which he contradicted his deposition testimony. Byrd's affidavit stated that "while he was employed by [the company], he wore a pager, he received and responded to pages both during and outside 'normal' working hours, he drove a truck with a sign that stated that [the company] was available for 24-hour service, and, as long as he was driving a company vehicle with such signage, he considered that he 'was working and advertising for [the company].' " *Id.* at ¶ 5.

**{¶ 27}** The supreme court considered whether "it is proper for courts to disregard an affidavit inconsistent with or contradictory to prior deposition testimony when ruling on a motion for summary judgment." *Id.* at ¶ 8. In resolving this issue, the court reiterated

its holding in *Turner v. Turner*, 67 Ohio St.3d 337, 617 N.E.2d 1123 (1993), that a moving party's contradictory affidavit may not be used to obtain summary judgment; "[w]hen a litigant's affidavit in support of his or her motion for summary judgment is inconsistent with his or her earlier deposition testimony, summary judgment in that party's favor is improper because there exists a question of credibility which can be resolved only by the trier of fact." *Byrd* at ¶ 22, citing *Turner*, paragraph one of the syllabus.

{¶ 28} The court noted, however, that with respect to evidence offered by a non-moving party, the analysis "is a bit different," and the court "must look to any explanation for the inconsistency." *Id.* at ¶ 27. This is because, unlike the moving party, the non-moving party "receives the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Id.* at ¶ 25, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). *See also Pettiford v. Aggarwal*, 126 Ohio St.3d 413, 2010-Ohio-3237, 934 N.E.2d 913 (holding that an expert witness's statement in opposition to summary judgment that contradicts that expert's former deposition testimony does not create a genuine issue of material fact unless the expert sufficiently explains the contradiction).

{¶ 29} In Coleman's case, the trial court misapplied this rule in two respects in concluding that it could not consider Dr. Drown's affidavit. First, the rule set forth in *Turner*, *Byrd* and *Pettiford* applies to contradictory sworn statements *made by the same person*, and Dr. Drown did not make any self-contradictory statements. Further, because Dr. Drown was not a party to the case, the trial court also erred in concluding that his statements were "self serving."

{¶ 30} Moreover, although not directly relevant to the question of the trial court's

consideration of Dr. Drown's affidavit for purposes of summary judgment, we also note that Dr. Drown's affidavit did not, in fact, contradict Coleman's statements. Dr. Drown's opinion related to Coleman's condition in 2015, and Coleman's statements related to whether she had received treatment for, been diagnosed with, or reported symptoms of depression in prior years.

{¶ 31} In granting the motion for summary judgment, the trial court also concluded, based on the passage of five years and without further elaboration on its reasoning, that reasonable minds could not conclude that Coleman's 2015 condition arose from the 2009 injury. This finding implies the existence of a bright-line rule as to the time for filing claims for psychological injuries, when no such rule exists. For example, *Hippely* and *Phipps*, discussed above, each involved the passage of more time than in this case before the claim for psychological injury was asserted, and those claims did not fail as a matter of law due to the passage of time.

{¶ 32} On the record before us, the trial court erred in finding that there was no genuine issue of material fact as to whether Coleman's psychological condition in 2015 was causally related to her prior physical injury in the workplace and in granting summary judgment in favor of KBO.

{¶ 33} The assignment of error is sustained.

{¶ 34} The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, P. J. and DONOVAN, J., concur.

Copies mailed to:

Michael J. Muldoon
Brian C. Thomas
Lisa Miller
Hon. Douglas M. Rastatter